UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| -v.- | :    S3 13 Cr. 923 (LAP) |
| LARRY DAVIS, and DCM ERECTORS, INC., | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# GOVERNMENT'S MOTION IN LIMINE

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York
                              Attorney for the United States of America

Robert L. Boone
Kan M. Nawaday
Assistant United States Attorneys
- Of Counsel –

**GOVERNMENT'S MOTION IN LIMINE**

The defendants, Larry Davis and DCM Erectors, Inc., are charged in a two-count Indictment (the "Indictment") with crimes arising from a scheme to commit minority and women-owned business enterprise ("M/WBE") fraud in connection with two Port Authority of New York and New Jersey ("Port Authority") public construction projects, namely One World Trade Center ("One WTC") and the World Trade Center Port Authority Trans-Hudson (PATH) Transportation Hub Project (the "WTC Hub") (collectively, the "World Trade Center Project"). Count One charges the defendants with conspiracy to commit wire fraud, while Count Two charges the defendants with the substantive act of wire fraud.

The Government respectfully submits this motion *in limine* seeking a ruling that evidence relating to the defendants' participation in over a dozen other construction projects where M/WBE fraud was committed is direct evidence of one or more of the charged offenses or, in the alternative, should be admitted pursuant to Federal Rule of Evidence 404(b). In addition, the Government moves to preclude argument or evidence suggesting that the Port Authority was allegedly negligent or careless in failing to stop the charged conduct.

**FACTUAL BACKGROUND**

As set forth in the Indictment, DCM Erectors, Inc. ("DCM"), the defendant, was a trade contractor that specialized in steel erection for large construction projects. Since at least in or about March 1999, Larry Davis, the defendant, has owned DCM through Canadian holding companies that he and his wife owned, and served as its President and Chief Executive Officer.

In or about 2007, DCM, the defendant, was awarded an approximately $256 million trade contract for work to be performed on One WTC. In or about 2009, DCM was awarded an approximately $330 million trade contract for work to be performed on the WTC Hub. Both contracts

1

were awarded to DCM by the Port Authority.  The work to be performed by DCM on the World Trade Center Project included, but was not limited to, drafting and engineering, surveying, structural steel supply and erection, and supply and installation of metal decking.

As a recipient of Port Authority Construction contracts, DCM, the defendant, was required to make good faith efforts for minority-owned businesses ("MBEs") to participate in 12 percent of the contract price and for woman-owned businesses ("WBEs") to participate in 5 percent of the contract price.  To become a Port Authority certified MBE, a company must, among other things, be owned and controlled by a minority who owns at least 51 percent of the company.  To become a Port Authority certified WBE, a company must, among other things, be owned by a woman who owns at least 51 percent of the company.  Additionally, M/WBEs must be independent businesses, meaning companies whose viability does not depend on its relationship with another firm or firms.  Accordingly the company must employ its own work force, own equipment necessary to perform its work, and be able to meet its financial obligations.

A.  The MBE Fraud

In or about 2001, Larry Davis, the defendant, created a joint venture between DCM and Solera Construction Inc. ("Solera"), a wholly owned minority company that purported to specialize in metal decking on large construction projects.  The joint venture was named Solera/DCM Joint Venture LLC ("Solera/DCM").  With respect to the World Trade Center Project, DCM represented to the Port Authority that Solera/DCM performed metal decking work that, in truth and in fact, was performed by a non-minority contractor ("Subcontractor-1").  To facilitate this fraudulent misrepresentation, Davis caused Subcontractor-1's workers to be placed on Solera/DCM's payroll to make it appear as if Solera/DCM was performing the metal decking work when it was not doing so.  In relation to the World Trade Center Project, DCM also represented to the Port Authority that Solera/DCM performed steel

procurement work when, in truth and in fact, DCM procured the steel.  To facilitate this fraudulent misrepresentation, Davis had the owner of Solera, Johnny Garcia, sign purchase orders that stated that Solera/DCM had procured the steel when it had not done so.  Garcia has since pled guilty to engaging in MBE fraud in connection with the World Trade Center Project pursuant to a cooperation agreement with the Government.  From in or about 2007 through in or about June 2012, DCM fraudulently claimed MBE credit for One WTC and the WTC Hub in excess of $70 million.

    B.  The WBE Fraud Scheme

Since DCM's inception in or about 1999 until in or about 2013, Gale D'Aloia worked for DCM performing payroll management work.  In or about 2001, while still working for DCM, D'Aloia incorporated GLS Enterprises, Inc. ("GLS"), serving as its Chairwoman and Chief Executive Officer.  GLS's only client was DCM and its related companies.  Accordingly, GLS's viability depended on DCM and D'Aloia reported directly to Larry Davis who approved all of GLS's major expenses.  Through GLS, D'Aloia performed the same payroll management work that she performed for DCM.  With respect to the World Trade Center Project, Davis caused DCM to represent to the Port Authority that GLS performed surveying and drafting work that, in truth and in fact, was performed by employees of DCM and/or employees of a company owned by Larry Davis named Automated Steel Detailing Associates, LTD (ASDA).  To facilitate this fraudulent misrepresentation, Davis caused DCM and/or ASDA's surveyors to be placed on GLS's payroll and GLS invoiced DCM for such payroll expenses.  For participating in the fraudulent payroll scheme for the surveyors, DCM paid GLS a fee equal to ten percent of the weekly invoiced payroll for the surveyors.  D'Aloia has since pled guilty to engaging in WBE fraud in connection with the World Trade Center Project pursuant to a cooperation agreement with the Government.  From in or about 2009 through in or about 2012, DCM

3

fraudulently claimed WBE credit for $6.3 million of surveying and payroll management work GLS purportedly was performing as a subcontractor to DCM.

    C. The Uncharged Fraudulent Conduct

At trial, the Government expects Johnny Garcia to testify that Larry Davis used Solera/DCM to commit MBE fraud in approximately 20 to 25 construction projects prior to the World Trade Center Project. Garcia learned of some of the projects during periodic meetings he would have with Larry Davis at DCM's offices regarding upcoming projects. However, the Government expects Garcia will testify that he learned about many of Solera/DCM's projects after having visited Solera/DCM's website. After learning of those projects, Garcia approached Davis about the fact that he had not been informed about them. According to Garcia, Davis responded, in part, by saying that DCM did not "need a minority" for some of the projects as they were privately funded. Garcia will testify that Davis ultimately agreed to pay him approximately $100,000 for past work performed by Solera/DCM that Garcia had discovered through his internet search. Garcia will further testify that he did not perform decking work, or supervise decking work, on any Solera/DCM project and that to the extent a project called for decking work, Subcontractor-1, the same subcontractor used for the World Trade Center Project, performed the job. Garcia will testify that the workers for Subcontract-1 would be placed on Solera/DCM's payroll and Garcia would give the owner of Subcontract-1 a check written from Solera's bank account to cover his fee. The check was written out of Solera's bank account, as opposed to the bank account of Solera/DCM, to hide the fact that Solera/DCM, a purported minority-owned decking company, was paying money to a non-minority owned decking company.

The locations of some of the Solera/DCM projects that occurred before the World Trade Center Project are as follows: (1) 731 Lexington Avenue, New York, NY, a/k/a "Bloomberg Financial"; (2) 200 West Street, New York, NY, a/k/a "Goldman Sachs Headquarters," (3) 1710 East Plaza, New

4

York, NY; (4) 225 Cadman Plaza East, Brooklyn, NY, a/k/a "Brooklyn Federal Courthouse"; (5) 229 West 43rd Street, New York, NY, a/k/a "The New York Times Building"; (6) 505 Fifth Avenue, New York, NY; (7) 340 Madison Avenue, New York, NY; (8) 4802 10th Avenue Brooklyn, NY, a/k/a "Maimonides Medical Center"; (9) 170 East End Avenue, New York, NY; (10) 271 Cadman Plaza E., Brooklyn, NY, a/k/a "U.S. Post Office, Brooklyn"; (11) the Metrotech Center Brooklyn, NY; (12) Atlantic Terminal in Brooklyn, NY; (13) 383 Madison Avenue, New York, NY, a/k/a "Bear Stearns"; (14) 1745 Broadway, New York, NY, a/k/a "Random House"; and (15) "JFK Concourse," Jamaica, NY.

In addition to Garcia, the Government expects Gale D'Aiola to also testify to uncharged fraudulent conduct committed by the defendants. Specifically, the Government expects D'Aiola to testify that in or around the time of DCM's construction of the Goldman Sachs Headquarters, referenced above, Larry Davis suggested to D'Aiola that GLS become certified to conduct drafting and surveying work. GLS became certified and, once certified, Larry Davis had GLS place engineering and drafting employees of ASDA on GLS's payroll so that Davis and DCM could meet its WBE goals on the project. As mentioned earlier, ASDA is a Larry Davis owned company. It is the same company from which certain employees were placed on GLS's payroll in relation to the World Trade Center Project. As compensation for placing ASDA employees on GLS's payroll for the Goldman Sachs project, D'Aiola was paid approximately 3% of the gross labor invoiced for the ASDA employees.

## APPLICABLE LAW

Evidence of an uncharged crime or bad act is not considered "other act" evidence if it: (i) "arose out of the same transaction or series of transactions as the charged offense"; (ii) "is inextricably intertwined with the evidence regarding the charged offense"; or (iii) "is necessary to complete the story of the crime on trial." *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (internal quotations and alterations omitted); *see United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir.

5

2000) (evidence of uncharged falsification of business inventory admitted to prove charged crime of making false statements to obtain a line of credit). Evidence of any of the foregoing may be admitted without regard to Rule 404(b). *See, e.g.*, *United States* v. *Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010); *United States* v. *Rigas*, 490 F.3d 208, 238-39 (2d Cir. 2007).

Rule 404(b) provides that admission of "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). The Rule expressly allows such evidence to be admitted, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States* v. *LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004).

## **DISCUSSION**

A. <u>Davis's Use of Solera/DCM and GLS in Past Projects is Direct Evidence Or, Alternatively, Should be Admitted Under Rule 404(b)</u>

Larry Davis's use of Solera/DCM and GLS in construction projects prior to the World Trade Center Project is direct evidence of the counts charged in the Indictment. The construction projects involving Solera/DCM and GLS that preceded the World Trade Center Project are "inextricably intertwined with" and "necessary to complete the story of" the defendant's scheme. *Gonzalez*, 110 F.3d at 942. With respect to the MBE fraud involving the World Trade Center Project, the crux of the defendant's scheme was to claim that decking work was being performed by Solera/DCM in order to claim MBE credit, when, in truth and in fact, that work was being performed by Subcontractor-1. That is *exactly* what happened in the uncharged conduct described above. As stated earlier, Johnny Garcia is

6

expected to testify that Solera/DCM was involved in approximately 20 to 25 projects prior to the World Trade Center Project and, to the extent that those projects called for decking work, Subcontractor-1 performed all the decking work.  Accordingly, Garcia's testimony is inextricably intertwined with and completes the story of why Davis used Solera/DCM on the World Trade Center Project.  With the help of Subcontractor-1, Davis had successfully used Solera/DCM in the past to falsely claim MBE credit.

In regards to the WBE fraud involving the World Trade Center Project, the defendant's scheme, in part, was to claim that surveying and drafting work was being performed by GLS in order to claim WBE credit, when, in truth and in fact, that work was being performed by employees of DCM or ASDA.  Again, this is precisely what Davis had done previously – specifically in relation to the Goldman Sachs project.  The Government anticipates Gale D'Aiola to testify that in or around the time of DCM's construction of the Goldman Sachs Headquarters, Davis had GLS place engineering and drafting employees of ASDA on GLS's payroll to give the false impression that GLS was performing the work it had been contracted to perform.  This evidence is clearly inextricably intertwined with and completes the story of why Davis used GLS on the World Trade Center Project.  Davis had past success with fraudulently using GLS to obtain WBE credit.

In sum, the striking similarities between Davis's fraudulent use of Solera/DCM and GLS in relation to the World Trade Center Project and his fraudulent use of those same entities in relation to other DCM related projects, makes evidence regarding those projects highly probative, direct evidence. *See United States* v. *Mavashev*, 455 F. App'x 107, 112 (2d Cir. 2012) (admitting uncharged fraudulent transactions that "demonstrated a pattern of criminal conduct because they shared . . . commonalities with the charged transactions," including use of the same brokerage and law firms in a mortgage fraud scheme).  Moreover, without this evidence of how the conspiracy and scheme developed over time, the jurors will be left with the misimpression that the fraud and conspiracy simply came into being

spontaneously at the time of the World Trade Center Project.  In other words, the prior dealings between the defendants and Garcia and D'Aloia are necessary background to show the trust between the conspirators and how the scheme developed over time.

In the alternative, evidence relating to Larry Davis's use of Solera/DCM and GLS in construction projects prior to the World Trade Center Project should be admitted under Federal Rule of Evidence 404(b) to prove intent, plan, knowledge, absence of mistake/accident for both counts in the Indictment.  With respect to the MBE fraud, the Government anticipates that Davis will argue that he lacked the requisite knowledge that Subcontractor-1, not Solera/DCM, was performing the decking tasks that Solera/DCM had been contracted to perform in relation to the World Trade Center Project.  However, the fact that Subcontractor-1, not Solera/DCM, had performed the decking work in every previous construction project involving Solera/DCM where such work was required, strongly suggests that Davis knew full well the fraudulent nature of the charged scheme.  *See United States* v. *Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.") (quoting *United States* v. *Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993).  Indeed, it strains credulity to believe that a partner in a joint venture was unaware that the joint venture routinely won contracts to perform certain work but never actually performed that work.

Similarly, with respect to the WBE fraud, the Government anticipates that Davis will claim that he was unaware that ASDA or other DCM employees, and not GLS, was performing the work that GLS was represented to be performing at the World Trade Center Project.  However, the fact that ASDA, not GLS, had performed the drafting and/or surveying work on another DCM led project, the Goldman Sachs Headquarters, even though it was represented that GLS was performing such work, strongly suggests that Davis knew the fraudulent nature of the charged scheme.  This is particularly true

given that Larry Davis owns ASDA.  The idea that Davis was unaware that a company he owned was actually performing the work that GLS claimed to have performed is simply not credible.

- B. <u>The Court Should Preclude Argument or Evidence Suggesting that the Port Authority was Negligent or Careless in Failing to Stop the Fraud</u>

The Government believes that certain defense arguments or evidence may improperly suggest to the jury that the Port Authority is to blame for purportedly failing to ferret out and stop the charged fraudulent conduct.  Any such argument or evidence should be precluded as irrelevant, because the law is clear that a victim's failure to uncover a fraud, even when presented with facts that might indicate that a fraud had been committed, is no defense to a fraud charge.

The Government expects to show that defendants used Solera/DCM and GLS as "pass-through" companies in order to fraudulently obtain construction contracts worth hundreds of millions of dollars related to the World Trade Center Project.   Moreover, Davis and DCM perpetuated the fraud by fraudulently representing that Solera/DCM and GLS performed work in relation to the World Trade Center Project that was actually done by non-M/WBE companies.  In addition, as part of the construction of the World Trade Center Project, the Port Authority hired two monitors – the Fortress Management Group ("FMG") and Thacher Associates ("Thacher") to monitor and investigate fraud and waste in connection with construction of the project.   Specifically, FMG was the monitor for the construction of One WTC, and Thacher was the monitor for the WTC Hub.

In *United States* v. *Thomas*, 377 F.3d 232 (2d Cir. 2004), the Second Circuit squarely held that a victim's lack of diligence (if any) in detecting a fraud cannot be used as a defense.  In *Thomas*, the defendant was charged with inducement of travel in interstate commerce for a fraudulent purpose.  At trial, defense counsel cross-examined the victim of the fraud concerning the lack of caution he exercised in his dealings with the defendant.  The District Court questioned the propriety of the line of questioning, noting that it was no defense to fraud that the victim was foolish or made insufficient

9

inquiries, and expressed its concern that defense counsel was insinuating to the jury that the victim could have discovered the fraud had he asked the right questions.  Defense counsel disclaimed any such intent and was directed to move on to a different line of questioning.  *Id*. at 240-41.  The Second Circuit held the ruling to be an appropriate exercise of the District Court's discretion.  *Id*. at 241.  The Second Circuit also found that it would be no defense that the victim might have discovered the fraud had it probed further, because federal anti-fraud statutes prohibit schemes to defraud, and to establish a scheme to defraud, there is no requirement that the victim act in the same manner as a person of ordinary prudence.  *See id*. at 241-42, 241 n.5.

In *United States* v. *Amico*, 486 F.3d 764 (2d Cir. 2007), the Second Circuit expanded the *Thomas* ruling to a charge of mail fraud in a mortgage fraud context.  The District Court had rejected a jury instruction proposed by the defense stating that the victim could have discovered false representations in mortgage fraud applications by the defendants, and that the victim's failure to do so constituted a defense.  The Court noted that "[t]he majority of circuits to address the issue have rejected this defense, holding that a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud."  *Id*. at 780.

In light of the Second Circuit's admonition that victim negligence, carelessness, or gullibility is no defense to a charge of fraud, this Court should direct defense counsel not to suggest – in cross-examination, summation, or otherwise – that the Port Authority and its employees could, or should, have been more diligent in their dealings with the defendants.  Any purported negligence by the Port Authority, or any steps it purportedly should have taken to prevent the defendants' fraud from succeeding, is simply irrelevant to whether the defendants participated in the charged scheme.  Similarly, the Court should direct defense counsel not to make arguments or offer evidence that FMG or Thacher, as agents of the Port Authority tasked with monitoring fraud in the construction of One WTC

and the WTC Hub, should have discovered the fraud. *See Thomas*, 377 F.3d at 241-42, 241 n.5 (finding that it is no defense that the victim might have discovered the fraud had it probed further in a scheme to defraud case).

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court grant the Government's motion *in limine*.

Dated: New York, New York
April 4, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____/s/_____
Robert L. Boone/Kan M. Nawaday
Assistant United States Attorneys
(212) 637-2208/2311